**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 17-cv-0582-WJM-CBS

ROCKY MOUNTAIN CHOCOLATE FACTORY, a Colorado Corporation,

      Plaintiff,

v.

TIMOTHY ARELLANO, and
AGS ENTERTAINMENT LLC,

      Defendants.

---

**ORDER GRANTING MOTION TO DISMISS
FOR LACK OF PERSONAL JURISDICTION**

---

In this trademark infringement action, Plaintiff Rocky Mountain Chocolate Factory ("RMCF") brings claims against Defendants, Timothy Arellano and AGS Entertainment LLC (together, "Arellano," except as addressed separately below) for violation of the Lanham Act, 15 U.S.C. § 1114(1), for trade dress infringement, for false advertising in violation of 15 U.S.C. § 1125(a)(1)(B), a tort claim for unfair competition, and a claim for violation of the Colorado Trade Secrets Act, Colorado Revised Statutes, §§ 7-74-101 *et seq.* (*See generally* ECF No. 25.) Now before the Court is Defendants' Motion to Dismiss for Lack of Personal Jurisdiction, or in the Alternative, Motion to Transfer Venue. (ECF No. 22 (the "Motion").) For the reasons explained below, the Motion is granted to dismiss this action for lack of personal jurisdiction.

## I. LEGAL STANDARD

The purpose of a motion to dismiss pursuant to Rule 12(b)(2) is to test whether

the Court has personal jurisdiction over the named parties. The plaintiff bears the burden of establishing personal jurisdiction over a defendant. *Behagen v. Amateur Basketball Ass'n*, 744 F.2d 731, 733 (10th Cir. 1984). As is true here, when the court does not hold an evidentiary hearing before ruling on jurisdiction, "the plaintiff need only make a *prima facie* showing" of personal jurisdiction to defeat a motion to dismiss. *Id.* (citing *Am. Land Program, Inc. v. Bonaventura Uitgevers Maatschappij, N.V.*, 710 F.2d 1449, 1454 n.2 (10th Cir. 1983)). A plaintiff "may make this *prima facie* showing by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant." *OMI Holdings, Inc. v. Royal Ins. Co. of Can.*, 149 F.3d 1086, 1091 (10th Cir. 1998). To defeat the plaintiff's *prima facie* case, a defendant "must present a compelling case demonstrating 'that the presence of some other considerations would render jurisdiction unreasonable.'" *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)).

To obtain personal jurisdiction over a nonresident defendant, the plaintiff "must show that jurisdiction is legitimate under the laws of the forum state and that the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment." *Benton v. Cameco Corp.*, 375 F.3d 1070, 1075 (10th Cir. 2004) (quoting *Soma Med. Int'l v. Standard Chartered Bank*, 196 F.3d 1292, 1295 (10th Cir. 1999)). In Colorado, the state's long arm statute "confers the maximum jurisdiction permissible consistent with the Due Process Clause." *Archangel Diamond Corp. v. Lukoil*, 123 P.3d 1187, 1193 (Colo. 2005) (referring to Colo. Rev. Stat. § 13-1-124). Thus, the Court need only address the constitutional question of whether the exercise of personal

jurisdiction over the defendants comports with due process. *Dudnikov v. Chalk & Vermillion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008) (the state jurisdictional analysis in Colorado "effectively collapses into the second, constitutional, analysis").

The Court will accept the well-pled factual allegations of the complaint as true to determine whether Plaintiffs have made a *prima facie* showing that personal jurisdiction exists. *Id.* Any factual conflicts arising from affidavits or other submitted materials are resolved in the plaintiff's favor. *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995).

## II.  FACTUAL BACKGROUND[1]

Plaintiff, RMCF, is a Colorado corporation with its principal place of business in Durango, Colorado.  (ECF No. 26-1 ¶ 2.)  RMCF operates as a franchisor, confectionery manufacturer, and retail operator.  (*Id.* ¶ 3.)  RMCF franchises to others the rights to operate RMCF stores. (*Id.*)  A total of approximately 400 RMCF retail stores are operated either by RMCF or its franchisees in numerous states, as well as in Canada and the United Arab Emirates.  (*Id.*)

RMCF owns and controls the service mark "Rocky Mountain Chocolate Factory" and related trade names and trade marks.  (*Id.*)  According to an affidavit submitted by an RMCF officer, "[i]n addition to receiving a license to use the RMCF Marks, RMCF franchisees are provided . . . a variety of confidential information proprietary to RMCF, including methods, strategies and techniques developed by RMCF such as gourmet

---

[1] Consistent with the standard outlined in Part II, these facts are drawn from the well-pled facts of RMCF's Complaint (ECF No. 25), and from the various affidavits and supporting documents filed by the parties, as cited.

chocolate specialty recipes and cooking methods, confectionary manufacturing, processing, ordering, stocking and inventory control, technical equipment standards, order fulfillment methods and customer relations, marketing techniques, written promotional materials, advertising, and accounting systems." (ECF No. 26-1 ¶ 7.)

On or about March 31, 2015, RMCF entered into a franchise agreement with non-parties Luke Joseph and Vegas Restaurants LLC (collectively, "Joseph") to operate a RMCF store in Summerlin, Nevada (the "Summerlin Store"). (*Id.* ¶ 12; ECF No. 35-2.) The franchise agreement with Joseph permitted him to transfer his franchise, with RMCF's approval, provided certain conditions were met, including that Joseph "obtains [RMCF's] written consent," that "[a]ll amounts due and owing . . . are paid in full," and that the transferee agreed to operate the Summerlin Store as an RMCF store and "to execute the . . . Franchise Agreement." (ECF No. 35-2 ¶ 16.2; *see also* ECF No. 26-1 ¶ 13.)

In September 2015, Joseph communicated to RMCF that he wanted to sell the Summerlin Store to Arellano. (*See* ECF No. 35-3; ECF No. 25 ¶ 20.) Individual Defendant Timothy Arellano is a resident of Clark County, Nevada, and he is the sole manager of Defendant AGS Entertainment, LLC ("AGS"), a Nevada LLC with a principal place of business in Nevada. (ECF No. 22-1 ¶¶ 2–5.) There is no claim or evidence that either Defendant is a Colorado resident. Other than the specific contacts detailed in this Order, neither Defendant owns property in, does business in, advertises or holds itself out in, or maintains any presence in Colorado. (*See generally* ECF No. 22-1 ¶¶ 9–28, 33–54.)

Between November 2015 and February 2016, Arellano and RMCF pursued

negotiations to transfer Joseph's RMCF franchise to Arellano. On November 19, 2015, Arellano submitted an application to RMCF and disclosed certain financial information. (ECF Nos. 35-1 ¶ 9; ECF No. 35-4; ECF No. 35-5.) On or about the same date, RMCF sent Arellano a lengthy "Franchise Disclosure Document" (ECF No. 35-6), and Arellano sent RMCF an acknowledgment of receipt (ECF No. 35-7). This receipt stated "[t]he franchisor is [RMCF]," and listed RMCF's address in Colorado. (ECF No. 35-7.) The Franchise Disclosure Document sent to Arellano also included the form of the proposed franchise agreement, which included a choice of law and forum selection clause providing that the franchise agreement would be interpreted under Colorado law, and that the state courts in La Plata County, Colorado, and federal courts in Colorado, would be the exclusive venue for any claims asserted between the franchisee (*i.e.*, Arellano) and the franchisor (*i.e.*, RMCF). (ECF No. 35-6 at 93, ¶ 22.1.)

Subsequent communications reflect that around that time, Arellano substantially took over operational control of the Summerlin Store from Joseph, and that the parties continued negotiations to finalize a franchise agreement, until approximately February 2016. In particular, on November 19, 2015, Joseph e-mailed both Arellano and RMCF, stating that he gave "100% permission to Mr. Timothy Arellano to place orders, to pay for orders and [to] operate" the Summerlin Store. (ECF No. 35-8.) RMCF internal e-mails reflect that on November 20, 2015, Arellano had a phone conversation with Kraig Carlson, a Franchise Sales Specialist at RMCF, who reported that Arellano was "in the process of trying to purchase" the Summerlin Store, and summarized items requiring follow-up: "In case things come to fruition[,] [t]he following . . . need to be addressed in order to have a chance to keep the [Summerlin S]tore open . . . ." (ECF

No. 35-9.)  Carlson reported that Arellano "ha[d] been approved to order product," but that, among other issues, "[Joseph's] debt [approximately $24,000] for product will have to be taken care of."  (ECF No. 35-9.)

On December 7, 2015, Mr. Carlson sent Arellano a list of "items that we need to get resolved ASAP in order to do a transfer of the store," and in response Arellano later sent RMCF an unexecuted copy of the purchase agreement for his acquisition of the Summerlin Store from Joseph.  (ECF No. 35-10.) (*Id.*)  On January 19, 2016, Arellano confirmed that he had "assumed the day to day operations in hopes to have a clean purchase," but communicated that "unfortunately [Joseph's] debt will have to be his own prior to such purchase."  (ECF No. 35-11.)[2]

Nevertheless, on January 28, 2016, RMCF sent Arellano a preliminary franchise approval letter, which still identified prerequisites for final execution, in particular re-iterating that "all outstanding balances will need to be paid . . . along with attending training in Durango, CO."  (ECF No. 35-12.)  On February 1, 2016, RMCF again communicated that "we are able to approve you as a [RMCF] Franchisee," but reiterated that the then-current amount of approximately $25,000 claimed due from Joseph's franchise must be paid before finalizing the franchise agreements, and that Arellano must attend training in Durango, Colorado.  (ECF No. 25-15 at 3.)[3]

_____

[2] The purchase agreement between Arellano and Joseph—at least in the unexecuted form transmitted to RMCF—made Arellano's purchase of the Summerlin Store contingent on Joseph's cooperation in obtaining approval from RMCF of Arellano as a franchisee and on Joseph's certification that his franchise agreement with RMCF was "paid in full and is free of any allegation or evidence of default or breach."  (ECF No. 35-10 at 6.)

[3] Later in February, the parties communicated regarding an agreement for Joseph to assign the lease for the Summerlin Store to Arellano, which called for RMCF's approval as franchisor, and RMCF again indicated it was witholding final approval of the franchise transfer

By the end of February 2016, however, the parties reached an impasse over payment of the amounts claimed due from Joseph's RMCF franchise. As a result, RMCF and Arellano never executed a franchise agreement. On February 26, 2016, Arellano communicated to RMCF that if the debt issue could not be resolved, Arellano might abandon the RMCF franchise and instead "operate the store as an independent." (ECF No. 35-15 at 1–2.) Arellano communicated, in part, to Carlson as follows:

> Since we are months into operation of [the] store the financial toll in delaying transfer has impacted our business operation and capitol [*sic*] tremendously and therefore we may need to possibly look at dropping the Rocky [M]ountain franchise name and operate the store as an independent non-franchise store if this becomes the decision and reality what concerns will your company have in the way of the store's conversion?

(*Id.*) On February 29, 2016, Carlson responded, again stating that "[a]ll amounts due must be satisfied before [RMCF] can facilitate a transfer of the existing [franchise] agreement." (*Id.* at 1.) Arellano responded the same day, stating "I understand what you require," but, "I'm not in a position to wait for you and [Joseph] to resolve your outstanding issues, so please let me know what issues I will have to remove [the RMCF] name from the store and operate as an independent." (*Id.* at 1.) Following these communications, the franchise agreement between the parties was never finalized or executed. (ECF No. 25 ¶ 22.)

On July 13, 2016, RMCF terminated Joseph's franchise agreement, largely because of the failure to pay the past-due amounts. (ECF No. 26-1 ¶ 18.) RMCF's

_____

until the amounts due from Joseph's franchise were resolved. (See ECF No. 35-15 at 2; ECF No. 35-14 at 1, 9.)

termination letter to Joseph advised that he could no longer use any RMCF trade secrets, signs, symbols, devices, trade names, trademarks, or other materials. (*Id.*) Arellano, however, continued to operate the Summerlin Store. (*Id.* ¶ 26.) On August 11, 2016, RMCF sent Arellano a letter notifying him of the termination of Joseph's franchise and that RMCF viewed Arellano's operation of the Summerlin Store as trademark infringement. (*Id.*, ¶ 19; *id.* at 10–11.)

As alleged by RMCF, Arellano continued to operate the Summerlin Store after that date, and RMCF alleges his operation has continued to infringe on its trademarks, trade dress, and trade secrets through the present day. (*See* ECF No. 25 ¶¶ 27–40; ECF No. 26-1 ¶¶ 21–31.) RMCF has sent several additional demand letters to Arellano. (*See id.* ¶¶ 19, 23, 24, 26, 30, 31.) Arellano, for his part, has made certain efforts to "de-identify" the Summerlin Store from RMCF's marks, including changing the name from "Rocky Mountain Chocolate Factory" to "Red Rock Chocolate Factory." (*See*, e.g. ECF No. 26-1 at 14–15; *id.* at 22.)

However, the parties have been unable to resolve their disputes, despite repeated communications over many months. RMCF maintains that Arellano's "de-identification" of the Summerlin Store has been perfunctory and insufficient, that he continues to infringe on RMCF's trademarks and trade secrets, and that this infringement harms RMCF, including by impairing its ability to grow, operate, and/or franchise competing RMCF stores in Nevada. (*See* ECF No. 25 ¶¶ 36–40; ECF No. 26-1 ¶¶ 29–36.) Arellano, on the other hand, has communicated that he has "no intention of infringing on any rights or inflicting any harm on [RMCF]," but he believes he has

sufficiently removed all trademarked materials from the store and will not take further steps to comply with RMCF's demands.  (*See* ECF No. 26-1 ¶ 31; *id.* at 39–41.)

The more specific details of how Arellano is allegedly infringing on RMCF's trademarks and trade secrets are not material to resolving the present Motion.  Treating RMCF's allegations as true, however, this alleged infringement is occurring exclusively at the Summerlin Store, in Nevada, but is harming RMCF both in Colorado, where it claims it is entitled to receive royalty and other payments from Defendants, and also in Nevada, where RMCF claims Arellano is allegedly engaged in false advertising and unfair competition, and causing customer confusion.  (*See* ECF No. 25 ¶¶ 42, 51, 52–55, 57.)

### III.  ANALYSIS

RMCF does not argue that Arellano is subject to this Court's general jurisdiction, only that the Court has specific jurisdiction over the claims in this action.  (*See* ECF No. 35 at 8.)  "A specific jurisdiction analysis involves a two-step inquiry."  First the Court "must consider whether the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court here." *Benton*, 375 F.3d at 1075 (internal quotation marks omitted).  "Second if the defendant's actions create sufficient minimum contacts, [the court] must then consider whether the exercise of personal jurisdiction over the defendant offends 'traditional notions of fair play and substantial justice.'" *OMI*, 149 F.3d at 1091 (quoting *Asahi*, 480 U.S. at 113).

The two steps of this analysis "are complementary, such that . . . the due process inquiry evokes a sliding scale: the weaker the plaintiff's showing on minimum

contacts, the less a defendant need show in terms of unreasonableness to defeat jurisdiction.  The reverse is equally true: an especially strong showing of reasonableness may serve to fortify a borderline showing of minimum contacts.'" *Benton*, 375 F.3d at 1078–79 (quoting *OMI*, 149 F.3d at 1092 (alterations incorporated)).

## A.    Minimum Contacts

The "'minimum contacts' standard requires, first, that the out-of-state defendant must have 'purposefully directed' its activities at residents of the forum state, and second, that the plaintiff's injuries must 'arise out of' defendant's forum-related activities." *Dudnikov*, 514 F.3d at 1071.  The Court addresses each inquiry in turn.

### 1.    Purposeful Availment / Purposeful Direction

#### a.    *Legal Principles*

The first step of the Court's analysis may be phrased either as whether the defendant "'purposefully directed' its activities at the forum state" or "'purposefully availed' itself of the privilege of conducting activities or consummating a transaction in the forum state," depending on the factual context and the nature of the claims. *Dudnikov*, 514 F.3d at 1071.  The Supreme Court has made clear that the aim of this inquiry is, in any event, "to ensure that an out-of-state defendant is not bound to appear to account for merely 'random, fortuitous, or attenuated contacts' with the forum state." *Id.* (quoting *Burger King*, 471 U.S. at 475.)

Three additional principles further inform the Court's analysis here. First, case law makes clear that the requisite "minimum contacts" "must arise out of contacts that

the 'defendant *himself*' creates with the forum States." *Walden v. Fiore*, ___ U.S. ___,

___, 134 S.Ct. 1115, 1122 (2014) (emphasis in original). Thus, "the unilateral activity of

another party is not an appropriate consideration when determining whether a

defendant has sufficient contacts with a forum State." *Dudnikov*, 514 F.3d at 1073

(internal quotation marks omitted); *accord OMI*, 149 F.3d at 1092.

Second, the Court's "'minimum contacts' analysis looks to the defendant's

contacts with the forum State itself, not the defendant's contacts with persons who

reside there." *Walden*, 134 S. Ct. at 1122. "To be sure, a defendant's contacts with the

forum State may be intertwined with his transactions or interactions with the plaintiff or

other parties. But a defendant's relationship with a plaintiff or third party, standing

alone, is an insufficient basis for jurisdiction." *Id.* at 1123. Rather, "it is the defendant's

conduct that must form the necessary connection with the forum State that is the basis

for its jurisdiction over him." *Id.* at 1122.

Third, the "mere foreseeability of causing an injury in the forum state is, standing

alone, insufficient." *Dudnikov, 514 F.3d* at 1077. A plaintiff must establish "not only

that defendants foresaw (or knew) that the effects of their conduct would be felt in the

forum state, but also that defendants undertook *intentional actions that were expressly

aimed at that forum state*." *Id.* (emphasis in original).

    b.   *Arellano's Contacts With Colorado*

Applying the foregoing principles, the Court finds that RMCF has made a

sufficient *prima facie* showing of minimum contacts, but just barely. Arellano

affirmatively directed communications and negotiations to RMCF in Colorado for the

purpose of establishing a business relationship, and thereby gained access to RMCF's trademarks and intellectual property. He also allegedly continued to use and benefit from unauthorized use of that intellectual property, even after being put on notice of RMCF's claim of infringement. *See Intercon,* 205 F.3d at 1248 (after receiving notice of alleged unlawful conduct causing harm in another state, defendant "should reasonably have expected to be sued there"). Given this fact pattern, in the language typically used in contract cases, Arellano "'purposefully availed' [him]self of the privilege of conducting activities or consummating a transaction in the forum state." *Dudnikov*, 514 F.3d at 1071. That is, Arellano did business with RMCF in Colorado, and thereby availed himself of the benefit of RMCF's trademarks and licensed methods, which are held in Colorado.

In reaching this conclusion, the Court focuses in particular on the Tenth Circuit's decision in *Benton*, on which both parties rely. In *Benton*, plaintiff was a uranium broker who was a Colorado resident, and Defendant was Canadian entity that had "entered into a series of approximately two dozen transactions" with the plaintiff over the course of eight years. 375 F.3d at 1073. The parties then negotiated a memorandum of understanding ("MOU") for a more continuous set of transactions, and also to create a joint venture. *Id.* After defendant completed a due diligence review in Colorado, it declined to finalize the transactions, and plaintiff sued as a result. *Id.* The Tenth Circuit observed that the facts presented "a very close case," *id.* at 1076, and held, first, that "minimum contacts" were established, but also, second, that given facts that "barely satisf[ied]" the minimum contacts standard, "an exercise of personal jurisdiction over

[defendant] would offend traditional notions of fair play and substantial justice," *id.* at 1080.

Comparing the facts here to *Benton* reveals that this case is even closer. *Benton* held that the parties' "'prior negotiations' and the 'contemplated future consequences'" of their MOU "centered around the continuing business relationship" to be created between the parties. *Id.* at 1077. Even though the actual uranium sales "would occur in places other than the state of Colorado," the court held that "[b]y engaging in a business relationship with [the plaintiff], who operates his business from Colorado, [defendant] purposefully availed itself of the privilege of conducting activities with the forum state." *Id.* (internal quotation marks omitted).

The same analysis generally applies here, where Arellano "engag[ed] in a business relationship with" RMCF. Arellano in effect acted as the *de facto* franchisee for RMCF during the period from approximately November 2015 through February 2016, while he negotiated with RMCF to become the permanent and authorized franchisee. During this period, RMCF gave him conditional or or preliminary approval to operate the Summerlin Store and permitted him to use its trademarks and related intellectual property. Like *Benton*, while the "phone calls and letters' exchanged between the parties during this period "are not necessarily sufficient . . . the correspondence exchanged . . . during the negotiation . . . provides additional evidence that [Arellano] pursued a business relationship with a Colorado business." *Id.*

However, other facts show that this case is an even closer call on "minimum contacts" than *Benton*. *Benton* stated that "even more important" to the court's analysis

than the parties' negotiated relationship was the fact that the defendant physically sent employees to Colorado to conduct due diligence, and while this "would have not been enough, in isolation, to establish minimum contacts, it represents an additional instance in which [defendant] purposefully and knowingly availed itself of a business opportunity in Colorado." *Id.* Nothing similar occurred here. Further, the analysis in *Benton* emphasized that the defendant "voluntarily conducted business with [the plaintiff] . . . for many years prior to and at the time of the events at issue." *Id.* at 1078. Again, nothing similar is true here, where the parties had no contacts prior to "the events at issue," which lasted only a few months before the alleged trademark infringement began.

Moreover, *Benton* was decided before *Walden*, in which the Supreme Court emphasized that "the plaintiff cannot be the only link between the defendant and the forum," which is quite nearly the precise circumstances that obtain here. 134 S. Ct. at 1122. RMCF does not identify any contacts between Arellano and the state of Colorado *other* than the communications and negotiations with RMCF which are at issue in this case. Thus the "intertwined" nature of Arellano's contacts with Colorado and his interations with RMCF further emphasizes the weakness of a showing of "minimum contacts" with Colorado. *See id.* at 1123.

Furthermore, much of RMCF's jurisdictional argument emphasizes actions taken by RMCF or by non-party Joseph, and not by Arellano. Such conduct by other parties does not establish jurisdiction over Arellano, and the Court does not consider acts taken by other parties in its jurisdictional analysis. For instance, the fact that Joseph had previously signed a franchise agreement consenting to jurisdiction and venue in Colorado is of no moment, since it is equally undisputed that Arellano never did sign

14

such an agreement with RMCF, nor did he through some other paper ever consent to jurisdiction or venue in Colorado.

Nevertheless, the Court also must account for the authority which holds that where the defendants' "express aim in acting" was to obtain benefits from the forum state—here, to obtain access to RMCF's trademarks and intellectual property—that fact tends to establish jurisdiction. *See Dudnikov 514 F.3d at 1075.* In *Dudnikov*, for example, the defendant had directed actions or communications to a third party in California (eBay), but because the intended result of those actions was to thereby impede the plaintiffs' business operations in Colorado (by prompting eBay to terminate the plaintiffs' online auctions), the court held that the defendant's actions "can be said to have reached into Colorado," thus supporting an exercise of jurisdiction. *Id.* A similar analysis applies here, where Arellano's negotiations with Joseph occurred in Nevada, but were undertaken with an "express aim" of gaining access to RMCF's trademarks and licensed materials. Thus, in addition to Arellano's own communications with RMCF, the Court considers his overall course of conduct in negotiating to purchase and take over the Summerlin Store as an RMCF franchise, and this tends to show Arellano's "purposeful availment" of benefits flowing from Colorado, namely, obtaining access to RMCF's trademarks and intellectual property.

Considering these precedents, together, and given the "light" burden of making a *prima facie* showing of jurisdiction at this phase, *see Wenz*, 55 F.3d at 1505, the Court finds that Arellano's application to be a RMCF licensee or franchisee, his purposeful acts in negotiating to take over the Summerlin Store and the RMCF franchise, and his operations as RMCF's *de facto* franchisee from approximately November 2015 through

February 2016 provide a sufficient showing of "minimum contacts," with Colorado in this case. However, even more than was true in *Benton*, this is a "very close case," in which Arellano's demonstrated contacts with Colorado "barely satisf[y] the minimum contacts standard." See 375 F.3d at 1076, 1080.

2. <u>Arising Out Of</u>

In regard to the second part of the minimum contacts analysis, the Tenth Circuit has explained that "[s]pecific jurisdiction . . . is premised on something of a *quid pro quo*: In exchange for 'benefiting' from some purposive conduct directed at the forum state, a party is deemed to consent to the exercise of jurisdiction for claims related to those contacts." *Dudnikov*, 514 F.3d at 1078. The relevant inquiry is "whether plaintiffs' injuries 'arise out of' defendants' contacts with the forum jurisdiction." *Id.* at 1078.

On the facts present here, the Court has little trouble concluding that the claims brought by RMCF "arise out of" Arellano's relevant contacts with Colorado. The relevant contacts are Arellano's actions taken to gain access to RMCF's intellectual property, and the gravamen of RMCF's claims is that having negotiated to obtain such access, Arellano then purposefully infringed on RMCF's rights and exceeded the uses permitted by RMCF.

**B. Reasonableness**

Having found "sufficient minimum contacts" the Court still must "consider whether the exercise of personal jurisdiction over the defendant offends traditional notions of fair play and substantial justice." *Benton*, 375 F.3d at 1078 (citing *OMI*, 149 F.3d at 1091). In deciding whether the exercise of jurisdiction is reasonable, courts

consider: "(1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies." *See, e.g.*, *Intercon, Inc. v. Bell Atl. Internet Solutions, Inc.*, 205 F.3d 1244, 1249 (10th Cir. 2000) (citing *Burger King*, 471 U.S. at 477; *Asahi Metal Indus. Co. v. Super. Ct. of Cal.*, 480 U.S. 102, 113 (1987)); *Benton*, 375 at 1078.

As noted above, the Court applies a "sliding scale." Thus because RMCF's showing on "minimum contacts" is very weak, the reasonableness factors "may be so weak that even though minimum contacts are present, subjecting the defendant to jurisdiction . . . would offend due process." *OMI*, 149 F.3d at 1095.[4]

1.     Burden on Defendant of Litigating in the Forum

"While not dispositive, the burden on the defendant of litigating the case in a foreign forum is of primary concern in determining the reasonableness of personal

_____

[4] RMCF argues that because Defendants did not specifically address their arguments to the five traditional reasonableness factors, there is "no evidence that could support a finding that litigating in Colorado will impose a meaningful burden." (ECF No. 35 at 12.) However, RMCF also makes only passing arguments addressed to these factors. This leaves the Court to analyze the reasonableness factors mostly only its own. Certain case law appears to shift the burden to defendants to "present a compelling case demonstrating 'that the presence of some other considerations would render jurisdiction unreasonable" once a plaintiff has made a *prima facie* showing of jurisdiction. *See OMI*, 149 F.3d 1091 (quoting *Burger King*, 471 U.S. at 472); *Employers Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1161 (10th Cir. 2010). Certainly, Arellano's counsel is cautioned that in different circumstances, the failure to identify and argue to the controlling legal standards and factors could well have forfeited Arellano's jurisdictional objections. *See ClearOne Commc'ns, Inc. v. Bowers*, 643 F.3d 735, 764 (10th Cir. 2011). However, given the overall arguments advanced by Arellano showing that it would be unreasonable for the Court to exercise jurisdiction, and RMCF's own failure to advance specific arguments on these factors, the Court finds Arellano's failure to specifically tailor his arguments to these factors is not fatal to his position overall.

jurisdiction." *OMI*, 149 F.3d at 1096. This "primary concern" weighs against the exercise of jurisdiction here. While the burden placed on Defendants located in Nevada to defend in Colorado is less than in cases such as *Benton* or *OMI* involving defendants in a foreign country, it would still impose real and substantial costs and burdens on Arellano to defend in Colorado. Given the "sliding scale" relationship with RMCF's bare-minimum showing of "minimum contacts," the Court finds that even this comparatively small burden weighs against the exercise of jurisdiction.

Moreover, the Court also views this analysis in light of authority holding that the "touchstone of the foreseeability that is critical to due process analysis . . . is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *Burger King*, 471 U.S. at 474 (ellipses in original; internal quotation marks omitted). Although more formally a part of the Court's "minimum contacts" analysis, the Court evaluates the degree of burden which shows the exercise of jurisdiction would unreasonable in light of the "sliding scale" relationship to the relative lack of foreseeability that Arellano might be "haled into court" in Colorado. *See OMI*, 149 F.3d at 1091. Here, RMCF provided Arellano with a proposed franchise agreement that included venue selection and jurisdictional waiver terms, but this agreement was never executed. Indeed, RMCF did not allow Arellano to sign the franchise agreement, because the preconditions that RMCF placed on doing so were never met. Despite the absence of such an agreement, RMCF permitted Arellano to operate the Summerlin Store and use its trademarks. None of the parties' other communications included a forum selection agreement.

In these circumstances, it was *more* foreseeable that RMCF (which routinely

18

does business outside Colorado) might have to litigate in another forum if a dispute arose *prior* to executing the franchise agreement, than it was that Arellano might have to defend claims in Colorado, given that none of the alleged wrongful acts occurred in Colorado, and the forum selection provision contemplated by the parties (or at least by RMCF) was never executed. In the Court's view it is highly significant on this issue that RMCF, without a signed franchise agreement in hand with Arellano (and the venue and choice of law protections it would have enjoyed under such an agreement), chose nonetheless to initiate a business relationship directly with the Defendant. Plaintiff and its lawyers should have foreseen the possibility that without such an executed franchise agreement, a court might well determine that the appropriate forum for resolution of a dispute with a Nevada LLC was in Nevada. Given these considerations, even comparatively light burdens of defending in a foreign forum weigh against the exercise of jurisdiction by this Court.

2. <u>Forum State's Interest in Adjudicating the Dispute</u>

"States have an important interest in providing a forum in which their residents can seek redress for injuries caused by out-of-state actors." *OMI*, 149 F.3d at 1096. This consideration weighs somewhat in favor of exercising jurisdiction. There is a state interest in providing a forum in which Colorado corporations such as RMCF can seek redress in disputes with out-of-state actors. However, this factor weighs less heavily here, where Plaintiff is a franchisor that has repeatedly and affirmatively placed itself into commercial relationships with franchisees in several other states and countries.

In addition, "[t]he state's interest is also implicated where resolution of the dispute requires a general application of the forum state's law." *Id.* The interest in

adjudicating RMCF's claim under the Colorado Trade Secrets Act in Colorado weighs somewhat in favor of the Court's exercise of jurisdiction. However, this is offset by the fact that RMCF's primary claims are brought under federal substantive law. And, RMCF's complaint is conspicuously silent as to whether its claim for the common law tort of unfair competition is pled under Colorado or Nevada law. (ECF No. 25 ¶¶ 56–59.) The Complaint likewise lacks factual allegations showing that this tort was committed in Colorado, rather than in Nevada, which seems more plausible given the facts. This makes it likely that Nevada substantive law governs this tort claim *See generally* Restatement (Second) of Conflict of Laws § 145(1)–(2). As a result, the mix of claims under federal, Colorado, and Nevada substantive law is, at most, a neutral consideration in the Court's jurisdictional analysis.

3.  Plaintiff's Interest in Convenient and Effective Relief

This factor "hinges on whether the Plaintiff may receive convenient and effective relief in another forum." *Benton*, 375 F.3d at 1079 (quoting *OMI*, 149 F.3d at 1097). In "cases where a plaintiff's chances of recovery will be greatly diminished by forcing him to litigate in another forum because of that forum's law or because the burden may be so overwhelming as to practically foreclose pursuit of the lawsuit," this factor weighs heavily. *Id.* However, this is not such a case. While there may be some slight inconvenience to RMCF, the Court finds that, as in *Benton*, RMCF "has not established that litigating the matter in [Nevada] would cause undue hardship," and therefore this factor "weighs . . . against an exercise of jurisdiction." 375 F.3d at 1079.

Adding to the weight of this factor, the Court sees no way in which RMCF's chances of recovery will be diminished by seeking relief in Nevada. To the contrary, a

primary part of the relief sought by RMCF is an injunction to halt Defendants' allegedly unlawful trademark infringements and related acts, which are occurring solely in Nevada. While a district court may enter an injunction reaching beyond its territorial bounds, it would undoubtedly be *more* "convenient and effective" for a court in Nevada to consider, impose, monitor, and/or enforce an injunction which is addressed solely to conduct occurring in Nevada. Indeed, such considerations would likely weigh against granting RMCF the relief which it seeks in this Court. *See* 11A Charles A. Wright, *et al.*, *Federal Practice and Procedure* § 2945 (3d ed., April 2017 update) ("One of the factors that the court must take into account when deciding a request for an injunction is whether the proposed decree would affect property or would restrain . . . . acts beyond its territorial jurisdiction.").

    4.    <u>Interstate Judicial System's Interest in Obtaining Efficient Resolution</u>

"This factor asks 'whether the forum states is the most efficient place to litigate the dispute.'" *Benton*, 375 F.3d at 1080 (quoting *OMI*, 149 F.3d at 1097). "Key to this inquiry are the location of witnesses, where the wrong underlying the lawsuit occurred, what forum's substantive law governs the case, and whether jurisdiction is necessary to prevent piecemeal litigation." *OMI*, 149 F.3d at 1097.

The witnesses here appear to be divided between Durango, Colorado and Las Vegas, Nevada. However, it appears likely that RMCF's witnesses in Colorado are already known and finite, and would testify primarily to facts have already occurred and are not substantially disputed. On the other hand, Mr. Arellano, employees of the Summerlin Store, or operators or employees of other RMCF stores in Nevada (with whom Arellano is allegedly competing), are likely to be more numerous, and would

21

likely be the most relevant witnesses in resolving the key factual disputes regarding whether Arellano's conduct since February 2016 has constituted infringement or misuse of RMCF's intellectual property.  In addition, all of the alleged acts of infringement have occurred in Nevada.  See *Systems Designs, Inc. v. New Customware Co., Inc.*, 248 F. Supp. 2d 1093, 1097 (D. Utah 2003) ("Trademark infringement is a tort."); *Allison v. Wise*, 621 F. Supp. 2d 1114, 1120 (D. Colo. 2007) ("As a matter of law, in Colorado, 'the place of injury is the place where the tort is committed.'" (quoting *McAvoy v. District Court in and for the City and County of Denver*, 757 FP.2d 633, 635 (Colo. 1988))).  As noted above, the governing substantive law appears to be a mix of federal, Colorado, and Nevada law, and RMCF seeks an injunction which would only have effects in Nevada.  For all these reasons, this factor weighs against an exercise of jurisdiction by this Court.

5.    <u>States' Interest in Furthering Fundamental Substantive Social Policies</u>

The last factor is "the interests of the several states, in addition to the forum state, in advancing fundamental substantive social policies."  *OMI*, 149 F.3d at 1097. "[A]nalysis of this factor focuses on whether the exercise of personal jurisdiction . . . affects the substantive social policy interests of other states or foreign nations."  *Id.* Neither party has identified substantive social policies which are materially affected by whether this Court or a court in Nevada hears this dispute.  This factor thus has comparatively very little weight in this case.

To the limited extent the Court weighs this factor, the Court notes that most state and federal courts recognize a policy favoring enforcement of contractual forum-

selection clauses, provided they were validly negotiated and agreed by the parties. *See generally*, *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972); *accord Cagle v. Mathers Family Tr.*, 295 P.3d 460, 465 (Colo. 2013) ("a forum selection clause is presumptively valid unless it is unreasonable, fraudulently induced, or against public policy"). As a corollary, although the Court's jurisdictional analysis stands alone in the absence of a contractual waiver or agreement, the Court is reluctant to impose jurisdiction in a venue which the parties' negotiations specifically considered, but did not adopt. Moreover, Nevada law appears comparatively more reluctant to enforce forum selection clauses. *See Tandy Computer Leasing, a Div. of Tandy Elecs., Inc. v. Terina's Pizza, Inc.*, 784 P.2d 7, 8 (1989) ("While some forum selection clauses are sufficient to subject parties to the personal jurisdiction of out-of-state courts, not all forum selection clauses are enforceable." (citing *Burger King*, 471 U.S. at 472 n.14)). Thus, to the limited extent the Court considers this factor, it weighs against exercising imposing jurisdiction where a plaintiff based in Colorado that regularly does business elsewhere sought a home state forum selection clause, but nonetheless went forward with the business relationship before the agreement containing the proposed clause was executed.

\*   \*   \*

In sum, because Defendants' contacts with Colorado only "barely satisf[y] the minimum contacts standard," and because a majority of the reasonableness factors weigh against the exercise of jurisdiction, the Court holds that its exercise of jurisdiction in this case "would offend traditional notions of fair play and substantial justice." *Accord*

*Benton*, 375 F.3d at 1080.[5]  The Court therefore will not exercise specific personal jurisdiction over the Defendants in this case.

### IV. CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1.    Defendants' Motion to Dismiss for Lack of Personal Jurisdiction, or in the Alternative, Motion to Transfer Venue (ECF No. 22) is GRANTED;

2.    Plaintiff's claims are DISMISSED WITHOUT PREJUDICE FOR LACK OF PERSONAL JURISDICTION; and,

3.    The Clerk of Court is DIRECTED to TERMINATE this action.

Dated this 19th day of October, 2017

BY THE COURT:

William J. Martinez
United States District Judge

---

[5] Because the Court holds that it lacks personal jurisdiction, it need not reach Defendants' alternative argument that venue is improper.  And, because the Court finds that it lacks jurisdiction, it lacks authority to grant the relief sought by RMCF's Amended Motion for Preliminary Injunction.  (ECF No. 26.)